Coddington *agt.* Davis and others.

<hr />

CODDINGTON, plaintiff in error, *agt.* DAVIS AND OTHERS, defendants in error.

### Questions discussed.

1. Whether the word "protest" has been adopted in legal and mercantile language, as comprehending *demand and notice,* when applied to a promissory note?

2. Whether the following letter from the *endorser* to the *holders* of a promissory note was a waiver of demand of the maker, and notice of non-payment to the endorser?

Coddington *agt.* Davis and others.

" Messrs. Davis Brooks & Co. Gent.,—Please not protest T. B. Coddington's note due 2nd February for ten thousand dollars, and I will waive the necessity of the protest thereof. And oblige respectfully, &c.

" New-York, January 28, 1840. SAML. CODDINGTON."

3. Whether an *assignment* by the maker of the note, to one of the holders, (immediately prior to the maturity of the note,) of all his property for the benefit of his creditors, giving preference to the *endorser* for the amount of the note in question, exonerated the holders from demanding payment, and giving notice of non-payment?

4. Whether a release and full discharge of all claims and demands signed by the holders of the note and other creditors to the *maker*, except what should be realized of said claims, &c., from the *assignment* made by the maker to one of the holders of the note, was such a discharge to the maker of the note as released the endorser?

5. Whether a new agreement executed by the maker, in consideration of the aforesaid release executed by the holders of the note and other creditors, to pay the creditors at the expiration of seven years whatever balance of said claims should remain unpaid out of the assets of said assignment, operated as a valid extension to the maker of the time of payment of such balance by which the endorser upon the note in question was discharged?

6. Whether, if the holders could not maintain an action against the maker on the note, until all the assigned property had been applied, and the balance remaining due thereby ascertained, their remedy against the endorser was not *suspended?*

This was an action of assumpsit commenced in the superior court of the city of New-York, by Charles A Davis, Sidney Brooks, Charles Davis and Theodore Dehon, plaintiffs, against Samuel Coddington. The declaration was upon the money counts and an account stated and copy note with notice. Plea —General issue and notice of special matter. The cause was tried before his Hon. Justice VANDERPOEL, on the 27th December, 1843. Upon the trial the plaintiffs produced in evidence a promissory note, a copy of which was served with the declaration, together with a notice that the same was a copy of a promissory note on which this action was brought, and which would be given in evidence under the money counts contained in the declaration, and that the same was the only case of action on which the plaintiffs relied in the suit; and the signatures of the maker and of the defendant as endorser of the note having been admitted by the counsel of defendant, the said note and endorsement were read in evidence to the jury in the words and figures following, to wit:

Coddington *agt.* Davis and others.

$10,000 00.                    New-York, December 31st, 1839.

Thirty days after date I promise to pay to the order of Samuel Coddington, ten thousand dollars, with interest at 7 per cent. from date.

D. B. c. 406.                    THOMAS B. CODDINGTON.

No. 437, due 2 Feb'y.

(Endorsed)        SAM'L CODDINGTON.

The plaintiffs' counsel then produced a letter from the said defendant to the said plaintiffs, dated January 28, 1840, and the signature of the defendant thereto having been admitted by his counsel, the said letter was read in evidence to the jury, and is in the words and figures following, to wit:

Messrs. Davis, Brooks & Co.

    Gent.

Please not protest T. B. Coddington's note due 2nd February, for ten thousand dolls., and I will waive the necessity of the protest thereof.    And oblige, resp'y, &c.

New-York, Jan. 28, 1840.        SAM'L. CODDINGTON.

The plaintiffs then rested.

The counsel for the defendant then moved for a non-suit on the ground that the plaintiffs had not proved a sufficient demand on the maker, and notice of non-payment of the note to the endorser, at the time the said note became due, and that the said letter from the defendant to the plaintiffs did not contain a waiver of such notice, but his honor the judge overruled the motion, and the counsel for the defendant excepted.

The counsel for defendant then opened the case to the jury.

The said defendant served with his plea of the general issue, a notice of which the following is a copy:

Please to take notice that the said defendant, at the trial of the above cause, will insist upon and give in evidence under the general issue above pleaded, that after the supposed promises and undertakings of the said defendant, and after the making of the promissory note by Thomas B. Coddington, upon which this action is brought, and before the commencement of this suit, the said plaintiffs released and discharged the

Coddington *agt.* Davis and others.

said Thomas B. Coddington from the payment thereof, and also that said plaintiffs, after the making of said note, and before the commencement of this suit, extended the time for the payment of the debt, for which said promissory note was given, by an agreement made by and between the said plaintiffs and the said Samuel Coddington, and which agreement was made by and between the said plaintiffs and the said Thomas B. Coddington, without the knowledge or consent or sanction of the said defendant; and also that said Thomas B. Coddington, after the making of said note, and before the commencement of this suit, made an assignment of all his property to Charles Davis, one of said plaintiffs, to secure the payment of said note and other debts due by said Thomas B. Coddington to said plaintiffs and other persons; and that said plaintiffs thereupon agreed to and did release, discharge, and forever acquit said Thomas B. Coddington from the payment of said promissory note beyond what said plaintiffs should realize from said assignment to said Charles Davis, they, said plaintiffs, assenting to said assignment and coming in under the same; and also that said plaintiffs, after the making of said note and after the execution of said assignment, but before the commencement of this suit, agreed to and with said Thomas B. Coddington, in consideration of said assignment and other considerations, to come in under said assignment to Charles Davis, and receive their proportion of the proceeds thereof, and to look solely to the proceeds thereof for payment of said note until said assignment should be finally closed; and that then and in case the proceeds of the same should not fully pay the amount secured by said note, said plaintiffs then agreed to extend and did extend the time for the payment of whatsoever balance might be and remain unpaid on said note, out of the assets of said assignment; and that said agreement was made by and between said plaintiffs and said Thomas B. Coddington, without the knowledge, consent, or sanction of defendant.

Dated New-York, August 17th, 1843.—Yours, &c.

To C. C. King, Esq.  Liv. Livingston,
  Att'y for pl'ffs.  Att'y for def't.

Coddington *agt.* Davis and others.

The counsel for defendant produced a written agreement bearing date the 8th day of February, 1840, signed by the plaintiffs and other creditors of the said Thomas B. Coddington, and the signatures of the plaintiffs thereto having been admitted by counsel for plaintiffs, the same was read in evidence to the jury, and is in the words and figures following, to wit:

Whereas Thomas B. Coddington of the city of New-York is indebted or liable to us for certain debts or liabilities heretofore incurred by said Coddington, and said Coddington has made an assignment of his property to Charles Davis, Esquire, of the city of New-York, for the benefit of us and other creditors of said Coddington, now in consideration of one dollar paid to us by said Coddington, and which we hereby severally acknowledge to have received, and in consideration of said assignment and a promise on the part of said Coddington hereinafter mentioned—

We, the creditors whose names are hereto subscribed, do hereby release, discharge, and forever acquit said Coddington, his executors and administrators from all claims, demands, liabilities, engagements, judgments, and other responsibilities now existing against said Coddington, beyond what we shall respectively realize of said claims, &c., from said assignment to Charles Davis, dated the 23d of January, 1840, we receiving or assenting to the conditions of said assignment and coming under the same for a full and perfect discharge of said claims, &c., said *Thomas B.* Coddington, in consideration of the above, giving us severally a written promise to pay us at the expiration of seven years from the date of this instrument, whatever balance of said claims should remain unpaid out of the assets of said assignment.

Witness our hands this eighth day of February, 1840.

Words "his executors and administrators," and word "claims, &c.," interlined before signing.

|  |  |
|---|---|
| Pierson & Co. | Davenport & Quincy, |
| Frederick A Gay, | George W. Shields, |
| E. J. Elting, | John C. Cass, |
| Davis, Brooks & Co. | Geo. B. Morewood & Co. |

Coddington *agt.* Davis and others.

The counsel for the defendant then produced, and the execution thereof having been admitted, read in evidence to the jury an assignment made by the said Thomas B. Coddington to Charles Davis, one of the said firm of Davis, Brooks & Co., and one of the plaintiffs, dated January 23, 1840, and Charles Davis's acceptance of the same, and which are in the words and figures following, to wit:

To ALL TO WHOM THESE PRESENTS SHALL COME.    I, Thomas B. Coddington, of the city of New-York, send greeting:

Whereas, I am indebted unto various persons and in various sums of money, and owing to combined causes my business and affairs not having proved as prosperous and successful as anticipated, and being desirous of appropriating my assets and property to the payment of my indebtedness as hereinafter mentioned.    Now know ye, that I, the said Thomas B. Coddington, for the purposes hereinafter mentioned, and for divers good causes and considerations, me thereunto moving, have granted, bargained, assigned and set over, and by these presents do grant, bargain, assign and set over unto Charles Davis, Esquire, merchant of the city of New-York, and to his executors, administrators and assigns forever, all, and all manner of goods, chattels, debts, moneys, and all other things of me, the said Thomas B. Coddington, of whatsoever nature or kind, and which are set forth and contained in a schedule hereto annexed marked L; or at present in my store number forty-three Broad-street, in the city of New-York.    To have and to hold the same unto the said Charles Davis, his executors, administrators and assigns forever, in trust, nevertheless to collect and receive all the said debts mentioned in said schedule L, and for that purpose to prosecute suits or adopt other proper measures to effect that object, and in trust also, to convert the said property or merchandize mentioned in said schedule into cash, by sale or otherwise, as may be deemed most advantageous, and then out of the moneys realized from said collections or said property, in-the first place to pay all expenses incident to this assignment, and collecting said debts, and making said sales, and in the second place to pay and discharge the debts owing

by me, the said Thomas B. Coddington, and mentioned and contained in the schedule hereto annexed marked A; and if there should not be sufficient to pay said debts in full, then to pay them in equal proportions according to their amounts. And in the third place, after paying the said debts mentioned in schedule A, then to the debts mentioned in the schedule hereto annexed marked B, and all other debts, or liabilities whatever, either due or to grow due, but contracted for previous to this assignment, and in case there should not be sufficient to pay said debts in full, then to pay them in equal proportions as far as said moneys will go, and in case of any surplus after paying all my said debts and liabilities, to pay over the same to me, my executors or administrators. And I do hereby authorize my said assignee to compound, compromise and arbitrate any debt or debts so due or owing to or by me as aforesaid, and acquittance or other sufficient discharge on payment or settlement, to give and execute, hereby giving him full power and authority in the premises, and to bring suits and adopt all lawful ways and means for the recovery and collection of said debts in my name, or otherwise as may be necessary, and to appoint one or more attorney or attorneys under him.

Hereby confirming whatsoever he may lawfully do in the premises. It being intended by this assignment that said Charles Davis shall act with all reasonable diligence in realizing said assets assigned, with a view to the best interests of the parties concerned, and appropriating said assets in the manner above directed.

In witness whereof, I have hereto set my hand and seal, this twenty-third day of January, eighteen hundred and forty.

THOMAS B. CODDINGTON.

*Signed, sealed and delivered* } OLIVET BRYAN, JR.
  *in the presence of* }

I, Charles Davis, the assignee above named, do hereby accept the above assignment, and engage and agree to execute the same according to its provisions.

Coddington *agt.* Davis and others.

Witness my hand this twenty-third day of January, eighteen hundred and forty.

CHARLES DAVIS.

Witness, I. PICKERSGILL.

## SCHEDULE A.

| | | | | |
|---|---|---|---|---|
| Samuel Coddington for endorsement, | 10,000 00 | |
| do. | do. | for *do.* | 1,185 44 | |
| do. | do. | for bal. of account, | 2,178 40 | 13,363 84 |

Davis, Brooks & Co. . . . . . . . . . . . 1,000 00

James Taylor for account . . . . . . . . 373 79

Joseph Meeks for rent . . . . . . . . . 250 00

Schedule B contains a list of other creditors and the amount due each. Schedule L contains assets in bills receivable and book accounts.

And all other claims and demands belonging to said Coddington at the time of assignment, of whatever nature or kind.

The counsel for the defendant then produced, and the signatures thereto and endorsements thereon having been admitted, read in evidence to the jury, an order dated 24th January, 1840, drawn by the defendant upon and received and accepted by the said Charles Davis, on the said 24th January, 1840, which order was received by the plaintiffs from the defendant, and was produced at the trial upon the call of the defendant, and is in the words and figures following, to wit:

Staten Island, January 24, 1840.

To Charles Davis, Esq.

Assignee, &c., New-York.

Sir,

Please pay to the order of Messrs. Davis, Brooks & Co. any and all moneys that may be received by you as assignee for my account of Tho's B. Coddington, as fast as collections to the extent of ten thousand dollars, for value received.

SAMUEL CODDINGTON.

Accepted to pay conformably to the order and terms of the assignment of T. B. Coddington. C. Davis, Ass'ee.

Witness to date, 24th January, 1840, and signature of C. Davis, assignee, J. Pickersgill. 24 January, 1840.

Coddington *agt.* Davis and others.

The counsel for the plaintiffs then, upon notice for that purpose given them, produced at the trial, and the defendant's counsel then offered and read in evidence to the jury, on the part of the defendant, a written promise of the said Thomas B. Coddington to the said Davis, Brooks & Co., the said plaintiffs, dated February 8th, 1840, in the words and figures following, to wit:

I hereby promise to pay Messrs. Davis, Brooks & Co., whatever they may not realize from my assignment to Mr. Chas. Davis on account of my indebtedness to them in notes, book accounts, endorsements, or otherwise, at the expiration of seven years from the date hereof.

New-York, Feb. 8, 1840.          THOS. B. CODDINGTON.

It was then admitted that the said Thomas B. Coddington delivered over to the said Charles Davis, the assignee, a large amount of property under the said assignment; that the said assignee has not yet sold or disposed of all the said property, and that said assignment has not been closed: that the said Charles Davis, the assignee, had made collections under the said assignment, that the whole net amount of the proceeds of the assigned premises which had been received by him as assignee, and for which he was accountable on the twenty-first day of December, 1843, amounted to three thousand one hundred and nine dollars and seventy-four cents, subject to his charge for commissions, if the same were allowable; that this amount had been paid over by him to Davis, Brooks & Co.; that so much thereof as the said defendant was entitled to receive under the said assignment, had been paid over to the said plaintiffs by the said Charles Davis under the said order from defendant to said Charles Davis, dated January 24, 1840, and were estimated at the time of the trial to amount to $2,800, and which the plaintiffs had applied in part towards the satisfaction of the note.

The counsel for the defendant then rested.

The counsel for the plaintiffs then produced, and the same being admitted, read in evidence to the jury a letter from

Thomas B. Coddington to Davis, Brooks & Co., dated 25th. January, 1840, as follows.

(Counsel for defendant objected to the reading of the same to the jury, which objection was overruled by the judge, and defendant's counsel excepted to the decision.)

New-York, January 25, 1840.

Gent.

I have to inform you that I have been under the necessity of making an assignment.

Mr. Charles Davis, of the firm of Davis, Brooks & Co., is the assignee, and Mr. James Taylor of No. 72 Broad-street is the attorney to whom I would refer you for information relating to my late business.

Yours respectfully,

To Messrs. Davis, Brooks & Co.    THOS. B. CODDINGTON.

The counsel for both parties then rested.

The counsel for the defendant then asked the court to charge the jury as follows:

FIRST—That the letter of the defendent of 28th January, 1840, waiving the necessity of protest of said note, did not waive the necessity of the plaintiffs demanding payment of the maker, and that plaintiffs were bound to prove on the trial of this cause a demand of the maker for payment, the same as if said letter had not been written.

SECONDLY—That the said letter of the defendant of 28th January, 1840, did not waive notice of non-payment of said note to the defendant, the endorser on said note, and that plaintiffs were bound to prove on the trial of this cause a notice of the non-payment of said note, the same as if said letter had not been written.

THIRDLY—That the written instrument signed by plaintiffs and others, dated 8th February, 1840, was a valid release and discharge by said plaintiffs of the maker of said note from all liability thereon, which discharged the liability of the endorser on said note.

FOURTHLY—That the plaintiffs signing said written instrument of 8th February, 1840, and receiving from said Thomas

Coddington *agt.* Davis and others.   .

B. Coddington his written promise to pay any balance, &c., in seven years thereafter, if not a valid discharge and release as above, was a valid extension of time to the maker of said note, which discharged the endorser on said note from all liability thereon.

FIFTHLY—That the plaintiffs having agreed by said instrument to come in under said assignment for a full and perfect discharge of all claims by them against said Thomas B. Coddington, could not sue said Thomas B. Coddington or said defendant, until said assignment was closed by said assignee, and that this suit was prematurely brought.

The judge charged the jury—That the plaintiffs having received from the defendant the letter of the date of 28th January, 1840, were not required to demand payment of the note of the maker, or to give notice to the defendant as endorser, of the non-payment of the same by the maker; and that the want of such demand and notice were not available to the defendant at the trial as a defence to the action.

And that the plaintiffs did not by the written instrument of the 8th February, 1840, signed by them, and in evidence before the jury, or the matters therein contained, discharge the defendant from his liability as endorser to pay the said note.

And that the plaintiffs signing the said written instrument and receiving from Thos. B. Coddington his written promise of the date of 8th February, 1840, also in evidence before the jury, was not such an extension of time to the maker of the note as discharged the defendant from his liability thereon, as endorser thereof, but that the liability and obligation of the defendant for the payment of the said note, if otherwise unimpaired and in force, continued obligatory upon him, notwithstanding the said instrument of writing so signed by the plaintiffs, and the said written promise so given to them by said Thomas B. Coddington.

And that the right of the plaintiffs to call upon the defendant for the payment of said note is not thereby deferred, nor the present suit for that cause prematurely brought.

To all which the defendants' counsel then and there excepted.

Coddington *agt.* Davis and others.

And the jury thereupon rendered a verdict for the said plaintiffs, for nine thousand nine hundred and ninety-two dollars and fifty-four cents.

The defendant brought a writ of error and removed the judgment to the supreme court, where, in May term, 1846, the judgment of the superior court was affirmed, ———— Justice, delivering the opinion of the court. (*Reported*, 3 *Denio*, 16.)

The defendant brought ·a writ of error and removed the judgment to this court.

*Livingston & Van Antwerp, Attorneys, and*
*Samuel Stevens & L. Livingston, Counsel* for plaintiff in error.

*First.* The letter of defendant of 28th January, 1840, waiving the necessity of protest of the note, did not waive the necessity of the plaintiff demanding payment of the maker, and giving notice of non-payment to the defendant.

. 1. Demand of payment and notice of non-payment, are distinct and different acts from that of protest, and in cases where it is not necessary to protest, a demand must be made and notice of non-payment given; and when a protest is necessary, notice must also, *that is in addition* to the protest, be given to the endorser. (3 *Kent*, 93, 4, *4th ed.*)

Protest is the official act of a notary, and although usual, is not necessary in the case of an inland bill. A demand by the holder, or any person for him, and notice of non-payment to the·endorser, is sufficient.

In the case of foreign bills where a protest is necessary, it is only evidence that a demand was made. It is neither notice, nor evidence that notice has been given to the endorser. (*Fitler* v. *Morris*, 6 *Wharton*, 406, 415; *Bank of Rochester* v. *Gray*, 2 *Hill*, 231, 227. 🖙 *Story Bills*, 302, *note* 2, 311, 346, 360; *do. from notes*, 346, 315; 6 *Wheat.* 572 *in point;* 4 *Cranch*, 141; 5 *Leigh*, 529; 17 *Wend.* 99; 4 *Hill*, 420; 7 *Wend.* 165; 9 *Wend.* 121. )

It is no part of the duty of a notary to give this notice. (*Morgan* v. *Van Ingen*, 2 *Johns. Rep.* 206; *Brook's Office of Notary, pp.* 79, 139.)

Coddington *agt.* Davis and others.

A waiver of protest where a protest is necessary, would not therefore be a waiver of demand; and, in this case, it is neither a waiver of demand or notice.

A waiver of notice of non-payment, is not a waiver of a demand. (6 *Massachusetts Reports*, 524; 11 *Wend. Rep.* 633.)

2. A protest being an act of a public officer, AFTER demand, (*Jacob's Law Dictionary*, 330—*title, Bills of Exchange*, 4,) and before notice, and being neither a demand or notice, a waiver of the protest, (especially of an inland bill,) is neither a waiver of demand or notice. (*Chitty on Bills, pp.* 362, 3, *ed. of* 1836; *Leftly* v. *Mills*, 4 *T. R.* 175; *Gale* v. *Walsh*, 5 *T. R.* 239; *Rogers* v. *Stevens*, 2 *T. R.* 713.)

The judge had no right to assume that the defendant meant anything more than he said. What he did say is IN WRITING, and the law cannot extend it beyond the legal meaning of the words used.

The law presumes all the parties knew the meaning of the words made use of; besides all the parties are merchants, and must be presumed to know the meaning of the terms made use of in the law-merchant.

*Second.* The assignment by the maker of the note of all his property for the benefit of his creditors, giving preference to the defendant, for the amount of the note in question, did not exonerate the holders of the note from demanding payment, and giving notice of non-payment.

1. The assignment was not to the defendant, but to one of the plaintiffs; it gave the defendant no control of the property.

2. It was not made at the request, or with the privity of the defendant.

3. The defendant, as soon as he knew of the assignment, and the day after it was made, transferred all his interest under it to the plaintiffs, which was accepted by them.

4. It follows, therefore, that the plaintiffs are in fact the persons who are preferred, to the amount of this note, in the assignment of the maker.

*Third.* The written instrument, signed by the plaintiffs and others, dated 8th February, 1840, was a valid release and dis-

charge by the plaintiffs of the maker of said note, from all liability thereon, and the endorser was also thereby discharged. (6 *P.* 416; 8 *P.* 236.)

1. The assignment by the maker of all his property, for the payment of the plaintiffs and others, and the new written agreement by the maker, to pay the plaintiffs in seven years whatever balance there might be, after applying the asssigned property towards the payment of these demands, was a sufficient consideration to support the release. (*Heathcote* v. *Crookshanks,* 2 *T. R.* 27, 8; *pr.* BULLER, J.)

2. The execution of it by one of the plaintiffs, in the name of the firm, was sufficient. (*Pierson* v. *Hooker,* 3 *Johns. Rep.* 68; *Bulkley* v. *Dayton,* 14 *do. do.* 387; *Austin* v. *Hall,* 13 *do. do.* 286.)

After the execution of this assignment and new agreement by the maker of the note, to pay any balance, and the execution, by the plaintiffs, of the instrument releasing the maker from all demands, no action could be maintained on this note by the plaintiffs against the maker. (*Hosack* v. *Rogers,* 25 *Wendell,* 313, 14, and 355, 6.)

And if plaintiffs could maintain no action on the note against the maker, most clearly they cannot against the endorser.

*Fourth.* If the position contended for in the last point should not be sustained by the court, then we insist, that the said assignment and new agreement to pay the balance, if any, in seven years, by the maker, and the release to him by the plaintiffs was a valid extension to the maker of the time of payment for any balance there might be due, for seven years, and the endorser was thereby discharged. (3 *Kent,* 111, 4*th ed.*)

*Fifth.* If the endorser should not be deemed to have been discharged by the transaction between the maker and the plaintiffs, clearly the plaintiffs could maintain no action against the maker on this note, until all the assigned property had been applied, and the balance remaining due thereby ascertained; and so long as the plaintiffs are precluded, by their own agreement and acts, from maintaining an action against the maker, their remedy is suspended against the endorser.

*Sixth.* The court below erred, in admitting the letter of T. B. Coddington, of the 25th January, 1840, to go to the jury as evidence against the defendant. ☞ 3 *Cow.* 621; 6 *H.* 292. Not proper evidence: if proper, should have been proved by the oath of witness. This is no better than hearsay. ☜

For these reasons it is submitted, that the judgment of the court below should be reversed.

☞ *Samuel Stevens, in Reply.* Waiver must be decided on the letter alone—so decided at the circuit before other evidence before the court. If the other ground had been started at the circuit we might have answered it. (*Story on Cont.* § 235, 245–7; *Vattel, B. II,* c. 17, § 263.—*Protest* has a legal meaning. No ambiguity. (*Jac. L. D.* 330; *Bill Exch.* 4.)—Endorser is surety. (3 *Kent,* 109; 2 *J.* 206; 8 *Wend.* 514, 516; 3 *Kent,* 124; 2 *H.* 231.)

Assignment of property does not alter case, unless it be such a case as to make *the endorser the debtor;* or make it his duty to pay the debt. Assigning as *security* does not dispense with the necessity of demand. (7 *Wend.* 165; 17 *Wend.* 489; 4 *Watts & Serg.* 478; 5 *Leigh,* 529; 7 *Hill,* 122; 5 *Hill,* 190; 2 *Denio,* 182.) One instrument referring to another. (10 *Wend.* 473, directly opposed to two cases cited from 18 *Pick.,* and so all the English cases on composition deeds.) ☜

*Charles C. King, Attorney,* and
*Charles O'Conor, Counsel,* for defendants in error.

*First.* The plaintiffs below were entitled to recover, on the endorsement of the defendant below, without proof of demand or notice.

1. The word "protest," contained in the defendant's waiver, dated January 28, 1840, has been adopted in legal and mercantile language, as comprehending *demand and notice,* when applied to a promissory note. (*Union Bank* v. *Hyde,* 6 *Wheaton,* 572; 6 *Ad. & El.* 167, 180; *Laws of* 1833, *p.* 394, § 8; *id.* 1837, *p.* 554, *sec.* 1; 15 *East,* 505; *Utica Bank* v. *Smedes,* 20 *Johns.* 377–384.)

2. Although a waiver of notice may not be a waiver of

Coddington *agt.* Davis and others.

demand, (6 *Mass. R.* 525, 11 *Wend.* 633,) yet the converse is not true.   A waiver of demand necessarily implies a waiver of notice.   (*Spencer* v. *Harvey,* 17 *Wend.* 490.)

3. Independent of the letter of January, 28, 1840, plaintiffs were relieved by the other circumstances of the case from making demand or giving notice.   Immediately prior to the maturity of this note, the maker executed an assignment of all his effects, in which he treated the note as a debt *due to the defendant,* and *in that character* gave it priority of payment. The defendant assented to this assignment, took possession of the fund thereby awarded to him, *as creditor of the assignor in respect of this note,* and transferred such fund to the plaintiffs, in part payment.   By this act the defendant assumed the office of paymaster, in respect to this note.   (*Corney* v. *Pacosta,* 1 *Esp.* 303;   *Bond* v. *Farnham,* 5 *Mass.* 171;   *Com. Bank* v. *Hughes,* 17 *Wend.* 98;   *Moore* v. *Small,* 2 *Greenleaf,* 210;   3 *Kent's Com.* 113;   17 *Wend.* 412;   2 *Conn't R.* 478;   1 *Johns. Cas.* 99;   *Boyd* v. *Cleaveland,* 4 *Pick.* 527.)

☞ Same thing in effect as though S. C. had been the assignee.   Assignment for his benefit, and he had fully assented to it. ☜

*Second.*   The so-called release includes only the debts due to Davis, Brooks & Co., mentioned in the assignment *as such,* and does not include the $10,000 note now in question.   The assignment places that note in the attitude of a debt due to the defendant; it being tacitly assumed that he would be obliged to pay it to the plaintiffs. .

1. The assignment and release should be read together, in construing the latter.   ☞ Don't apply to this note. ☜ (10 *Wend.* 479; 1 *Ridgway's Parl. Cases,* 461; 4 *Wend.* 74; 2 *Bli. P. C.* 60; 5 *Cow.* 210; 2 *Bailey's S. C. Law R.* 145; 8 *Mass.* 214; 1 *T. & Russell,* 52; 3 *Man. & Ry.* 406.)

2. In construing releases, regard is had to the end in view; and general words are always restrained to the purposes expressed by the *special* words contained in the instrument.   (1 *Edw. R.* 39; 1 *B. & Ald.* 104; *Jackson* v. *Stackhouse,* 1 *Cow.* 123–126; *Lampon* v. *Corke, B. & Ald.* 606; 7 *Com. Law.* 205;

---

Coddington *agt.* Davis and others.

---

*Bruen* v *Marquand,* 17 *Johns.* 61; *Duffy* v. *Orr,* 1 *Clark & Finelly,* 253; 5 *Bli. N. S.* 620; 18 *Pick.* 327, 346, 353; ☞ *Tayler* v. *Homersham,* 4 *M. & Selw.* 422; *Simons* v. *Johnson,* 3 *B. & Ad.* 175; 23 *Com. Law,* 50; 2 *Brod. & Bingh.* 51; 6*th Com. Law,* 16; 15 *C. L.* 503, to prove these cases not ·overruled. ☜)

*Third.* The so-called release is wholly inoperative and ·void. ⸴

1. It is without seal. (*Crawford* v. *Millspaugh,* 13 *Johns.* 87; 2 *J. R.* 449.)

2. Their promise to pay in seven years is no consideration. (*Boyd* v. *Hitchcock,* 20 *J. R.* 78; *Hughes* v. *Wheeler,* 8 *Cow.* 77; 5 *T. R.* 516; 1 *Wend.* 172; 3 *Wend.* 66.)

3. The assignment, being a prior voluntary act of T. B. Coddington, not done at the request of Davis, Brooks & Co., cannot operate as a consideration. (17 *J.* 174; 1 *Chitty's Plg.* 296, note 1, *Springfield ed.* 1840; 1 *Caines R.* 286; *Bartholomew* v. *Jackson,* 20 *J. R.* 28; 2 *Harrison's N. J. R.* 387; 11 *Ad. & Ellis,* 348; 5 *J. R.* 277; 7 *Cow.* 360; *Allen* v. *Roosevelt,* 14 *Wend.* 103.)

4. The so-called release, if applicable to the note in question, would not be effectual as an extension of credit. (3 *Kent's Com.* 111, *and notes ;* *McLemore* v. *Powell,* 12 *Wheaton,* 554.)

DECISION.—Judgment affirmed. GARDINER, BRONSON, JEWETT, JONES & WRIGHT, J. J., *for affirmance.* RUGGLES, GRAY & JOHNSON, *for reversal.*

NOTE.—GARDINER, J., delivered the prevailing opinion of the court, and said: That the term " protest," in a strict technical sense, is not applicable to promissory notes. The word, however, has by general usage acquired a more extensive signification, and in a case like the present includes *all those acts which by law are necessary to charge an endorser.*

And that the *letter of the endorser* of the 28th January, 1840, furnished *prima facie* evidence of an intent by the endorser *to waive demand of payment and notice,* to which he was otherwise entitled.

On the point that the written statement signed by the plaintiffs and others, dated 8th February, 1840, was a valid discharge by the plaintiffs of Thomas Coddington, the maker of the note, from all liability thereon, and consequently of the endorser—*held,* that taking the schedule (A) in connection with the assignment, and the written direction of the defendant to Davis, as assignee, on

Coddington *agt.* Davis and others.

the 24th of January, the defendant recognized this as a debt due from Thomas Coddington to *himself*, by claiming under the assignment by which it was so declared, and as a debt due *from him* to the *plaintiffs* by a voluntary application of his private funds to its payment.

The discharge refers to and absolutely adopts the assignment, with all its conditions and provisions as its basis. And the engagement entered into by Thomas Coddington at the time of the execution of the release confirms this view.

The discharge being legally binding upon the parties, it does not extend to this demand, and cannot have the effect either to discharge or extend the time of payment of the note in question.

RUGGLES, J., delivered a *dissenting* opinion, in which he discussed only the effect of the instrument called the discharge, dated on the 8th February, 1840, signed by Davis, Brooks & Co., and said:

" Finally. From reading the three instruments together, that is to say, the assignment and schedules, the discharge and the written promise of T. B. Coddington, I am brought to the following conclusions:

"*First.* That by the assignment and schedules, without reference to any other paper, Davis, Brooks & Co. were entitled to the dividends on tho $10,000 debt, mentioned in schedule A, as the creditors of *T. B. Coddington*, although that debt was set down against the name of Samuel Coddington as endorser.

"*Second.* That by the recitals in the discharge, *Davis, Brooks & Co.* referred to the debts due from T. B. Coddington to them, of which this was the principal one, and therefore include this debt: that they do not refer to the debts set down to the names of *Davis, Brooks & Co.*, and therefore do not exclude it.

"*Third.* That the operative words in the body of the discharge are amply sufficient to include the debt in question, and do include it.

"*Fourth.* That the obvious meaning of the discharge was, that it should operate on all debts on which the creditors who signed it were respectively entitled to dividends; and,

" *Fifth.* That *Davis, Brooks & Co.*, in conformity with this construction, took Thomas B. Coddington's written promise to pay, at the end of seven years, the balance that might remain due on this note, and on his other debts, after deducting what might be realized from the assignment."

And was therefore of opinion that if the instrument signed by Davis, Brooks & Co. of the 8th February, 1840, did not entirely discharge *Thomas B. Coddington* from all liability on the $10,000 note as maker, it operated beyond a doubt to *extend the time of the payment of the debt until the expiration of seven years from the date of the instrument*, and therefore discharged the endorser. That the judgment of the supreme court should be reversed, and a new trial granted.

*Reported, 1 Comstock, 186.*